UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kenneth Henin,                                               Civ. No. 19-336 (PAM/BRT)

          Plaintiff,

v.                                                           **MEMORANDUM AND ORDER**

Soo Line Railroad Company,
d/b/a Canadian Pacific,

          Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss or in the alternative for Summary Judgment. For the following reasons, the Motion is granted.

**BACKGROUND**

Plaintiff Kenneth Henin worked as a conductor at Defendant Canadian Pacific ("CP") from 2003 until the events giving rise to this lawsuit. (Henin Dep. at 39 (Docket No. 53-1 at 14);[1] see also Docket No. 53-1 at 508 (OSHA complaint stating that Henin began employment with CP in January 2003).) In 2015, Henin reported what he characterizes as two safety violations to his superiors. The first report was sometime in March 2015, when Henin had a conversation with a superior. He does not recall which superior, however. (Id. at 86 (ECF p. 26).) He first testified that he did not recall the

---

[1] CP submitted the administrative record from the proceedings before the Administrative Law Judge as an Exhibit to the Declaration of Tracey Holmes Donesky. (Docket No. 53.) Although Plaintiff objects to the Court's consideration of the administrative record, the three-page Complaint offers no factual background and the Court has therefore relied on the administrative record for that background information. Because the record is voluminous, the Court will cite the page number from the Court's electronic filing system as well as the page number of the document itself.

substance of the conversation, then stated it involved spotting rail cars against a bumper at a mill in Hastings, Minnesota, and different trainmasters' rules for such spotting. (Id.) The second alleged report occurred on May 8, 2015, when Henin had a conversation with Tom Jarad, a trainmaster and one of Henin's superiors. This conversation involved the use of "over" and "out" at the end of radio transmissions. (Id. at 92 (ECF p. 27).) Henin complained to Mr. Jarad that different trainmasters told conductors different things about when "over and out" was required to end a radio transmission. (Id. at 94-95 (ECF p. 28).) Henin testified that he "didn't feel like [the conversation] was heated" (id. at 98 (ECF p. 29)), but stated that at some point after the conversation, Mr. Jarad sent him home for the day. (Id. at 102 (ECF p. 30).)

Two days later, on May 10, 2015, Henin fell while going between rail cars. He first reported to Mike Strahlman, another trainmaster, that he had hit his head, but later said that he did not know whether he hit his head. (Disciplinary Hrg. Tr. at 13-14 (Docket No. 53-1 at 96-97).) He refused Mr. Strahlman's request to file a written report about the incident. (Id. at 15 (ECF p. 98).) Henin claims that he refused because Mr. Strahlman wanted him to write the report on a blank piece of paper rather than the usually required form for such reports. (Id. at 47-48 (ECF p. 130-31).) There is no dispute that Henin was not seriously injured in the incident, nor does he dispute that he was not carrying a lantern at the time. (Id. at 46 (ECF p. 129).) CP investigated and determined that Henin violated safety rules by not using a lantern, because it was early evening and overcast at the time of the incident. (Id. at 30 (ECF p. 113).)

On May 18, 2015, Trainmaster Strahlman saw Henin go between rail cars without securing the cars and without leaving at least 50 feet between the cars. (2d Disciplinary Hrg. Tr. at 14 (Docket No. 53-1 at 218).) CP investigated and determined that Henin violated safety rules, which require that there be at least 50 feet between rail cars and for the cars to be secured before an employee goes between those cars. After a hearing on the two safety violations, CP terminated Henin's employment. (June 5, 2015, Letter (Docket No. 53-1 at 284).)

Henin then brought a complaint with the Department of Labor, claiming that he was fired for reporting safety concerns in March and May 2015. (Docket No. 53-1 at 505-09.) The Occupational Safety and Health Administration ("OSHA") investigated and dismissed Henin's complaint. Henin appealed that dismissal to an Administrative Law Judge ("ALJ"). The parties engaged in four months of discovery, although Henin did not take any depositions or propound any discovery requests. CP then sought summary adjudication from the ALJ. After motion practice regarding discovery disputes, CP filed the final version of its motion in October 2017. As CP repeatedly emphasizes, Henin acknowledged before the ALJ that discovery was complete and did not argue that he needed more time for discovery.

In January 2019, the ALJ granted CP's motion, finding that there was no evidence of a connection between the alleged safety reports and Henin's termination. (Docket No. 53 at 481-85.) Henin petitioned the Administrative Review Board ("ARB") to review that decision but filed his petition a week late. Three days after CP moved the ARB to dismiss the petition as untimely, Henin filed the instant federal lawsuit.

The ARB ultimately determined that there were equitable reasons to accept Henin's untimely appeal and reinstated it. (Docket No. 53-1 at 500-03.) But the ARB also dismissed the petition because Henin had filed this lawsuit. (Id. at 503.) CP appealed the ARB's reinstatement decision to the Eighth Circuit Court of Appeals, and this matter was stayed pending that appeal. In March 2021, the appellate court determined that the ARB was within its authority to toll its own time limits for filing petitions for review. Soo Line R.R., Inc., v. Admin. Review Bd. of the U.S. Dep't of Labor, 990 F.3d 596, 599 (8th Cir. 2021). This Court lifted the stay and CP filed the instant Motion shortly thereafter.

CP argues that dismissal is appropriate because Henin litigated his termination for so long before the ALJ and ARB that waiver, laches, and/or judicial estoppel should prevent him from relitigating it now. In the alternative, CP contends that it is appropriate for the Court to review the substance of the case on the administrative record alone and that summary judgment in CP's favor is warranted. Henin opposes the Motion, averring that he needs more discovery because in the proceedings before the ALJ, CP relied on the affidavits of two witnesses who were not disclosed until after discovery closed and whom Henin was not able to depose.

**DISCUSSION**

The Federal Railroad Safety Act ("FRSA") provides that a "railroad carrier . . . may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act" of "fil[ing] a complaint . . . applicable to railroad safety or security." 49 U.S.C. § 20109(a)(3). This section also prohibits retaliation or discrimination against an employee

for "notify[ing], or attempt[ing] to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee." Id. § 20109(a)(4).

An employee who claims retaliation or discrimination must first file a petition with the Secretary of Labor. Id. § 20109(d)(1). If the Department of Labor does not issue "a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an "original action . . . in the appropriate district court of the United States." Id. § 20109(d)(3). To establish a FRSA violation, the employee must show "that [the] protected activity was a contributing factor in the adverse action alleged in the complaint." 29 C.F.R. § 1982.104(e)(1).

Henin's OSHA complaint alleged two different safety reports: the discussion in March 2015, described in the OSHA complaint as a discussion with Mr. Jarad about the use of "over and out," and another discussion on the same topic with Mr. Jarad in May 2015. (Docket No. 53-1 at 508.) His Complaint here, however, states merely that Henin engaged in "numerous protected activities under the FRSA" including, but not limited to, "reporting an on-the-job injury in the St. Paul rail yard on May 10, 2015." (Compl. (Docket No. 1) ¶ 9.) Henin's opposition memorandum essentially abandons any claim regarding reporting alleged safety issues, focusing almost solely on his injury-report claim.

**A.    Waiver**

CP first argues that Henin waived his right to bring a federal claim under FRSA by litigating before the ALJ. CP acknowledges that no court has yet precluded a railroad employee from bringing a federal lawsuit based on the employee's pursuit of

5

administrative remedies.  See Hall v. Soo Line R.R. Co., No. 17cv2120, 2017 WL 4772411, at *3 (D. Minn. Oct. 20, 2017) ("[N]o federal case has held that the statutory right to bring a federal suit is subject to waiver.").

The Eighth Circuit Court of Appeals has ruled the right to bring a federal lawsuit under FRSA may be waivable in some situations.  Gunderson v. BNSF Ry. Co., 850 F.3d 962, 972 (8th Cir. 2017).  In Gunderson, the plaintiff litigated before the ALJ for four years.  Id. at 967.  The parties participated in a six-day evidentiary hearing, after which the ALJ ruled against the plaintiff employee.  Id.  The employee then filed a federal lawsuit during the 10-day period between the ruling and the date the ALJ's decision became a final order under the regulations, which would have precluded the employee from filing a federal lawsuit.  Id.

The appellate court disagreed with the employee's argument that a FRSA plaintiff has "an absolute right to file a kick-out de novo action" assuming the delay was not due to the employee's bad faith.  Id. at 971-72.  The court instead found that "it is likely that common law principles of laches may apply to cut off an employee's right to sue, or at least to seek equitable relief, some time after the § 20109(d)(3) action accrues."  Id. at 972.  The court, however, determined that waiver did not apply in that case because the railroad had not developed the record on waiver and did not raise the laches or estoppel issues before the district court.  Id.  Here, however, CP has squarely raised these defenses and has developed the record regarding their applicability.

"[W]aiver is the intentional relinquishment of a known right."  Valspar Refinish, Inc. v. Gaylord's Inc., 764 N.W.2d 359, 367 (Minn. 2009) (quotation and citation omitted).

The elements of waiver are the party's knowledge of the right and intent to waive it. Stephenson v. Martin, 259 N.W.2d 467, 470 (Minn. 1977). As CP points out, Henin's right to file a federal action arose on January 9, 2016, 210 days after he filed his OSHA complaint. Henin does not claim that he did not know about his right to file a federal action, and the evidence is clear that he was informed of that right clearly and unequivocally. (See Feb. 4, 2016, Letter (Docket No. 5301 at 325).) And while the delay in the issuance of the ALJ's opinion is not attributable to Henin, the fact remains that he could have filed his federal action at any time during that delay but chose not to do so. It was not until he failed to file a timely appeal from the ALJ's decision that Henin opted to file this lawsuit, three years after he could have done so. The record demonstrates that Henin waived his right to bring this lawsuit.

Similar to waiver, laches applies when a party engages in "unreasonable and unexcused delay" that prejudices the other party. Whitfield v. Anheuser-Busch, Inc., 820 F.2d 243, 244 (8th Cir. 1987). CP has sufficiently established the prejudice it will suffer from the long delay between the 2015 incidents and Henin's federal filing. As CP notes, Henin's termination was six years ago, and witnesses' memories of the incidents at issue will now be highly unreliable. Indeed, a mere two years after the incidents, Henin testified that he did not recall the substance of his alleged safety report in March 2015, or even the date the conversation took place. (See, e.g., Henin Dep. at 84 (Docket No. 53-1 at 25) (Henin "[is] not" able to be more specific as to the date in March); id. at 85 (Docket No. 53-1 at 26) ("I don't recall" who was present for the conversation); id. ("I don't recall" how he came to be speaking to the Trainmaster in March 2015); id. at 86 (Docket No. 53-1 at

7

26) ("I just don't recall" anything more about the alleged March 2015 conversation).) Henin's delay in the exercise of his right to bring a federal lawsuit smacks of forum-shopping, and his current claim that he requires more discovery is not well-taken in light of his failure to engage in any discovery before the ALJ.

This case, then, is unlike <u>Hall</u>, where the plaintiff litigated before the ALJ for less than a year, and even unlike <u>Gunderson</u>, where the railroad did not raise laches before the district court or develop the record on waiver or laches.  <u>Hall</u>, 2017 WL 4772411, at *2; <u>Gunderson</u>, 850 F.3d at 972.  The record before the Court demonstrates that Henin has waived his right to bring a federal action under FRSA, and that laches also applies to prevent him from doing so.

**B.    Motion for Summary Judgment**

    **1.    Rule 56(d) Affidavit**

Even if not subject to dismissal on equitable grounds, disposition of Henin's claims on the administrative record is appropriate.  Henin's counsel filed an affidavit averring that summary judgment is premature because discovery is not complete, because the ALJ's four-month discovery period gave the parties only a "very limited opportunity to conduct discovery."  (Ekstrom Aff. (Docket No. 62) ¶ 4.)  According to the affidavit, CP did not disclose as witnesses "two management officials who later provided affidavits" in support of CP's motion for summary disposition.  (<u>Id.</u> ¶¶ 5-6.)  The affidavit asserts that "[t]here was no opportunity to take depositions of these crucial witnesses prior to the motion for summary judgment."  (<u>Id.</u> ¶ 7.)

The affidavit also casts aspersions on Trainmaster Jarad, who was disclosed and

8

who testified by affidavit before the ALJ. An ALJ in a different matter found Mr. Jarad's testimony not credible. (Id. ¶ 8.) The affidavit thus argues that the ALJ improperly relied on Mr. Jarad's affidavit instead of requiring his live testimony, at which his credibility could be judged. (See id. ¶ 11 ("[W]e again strenuously objected that credibility in termination cases cannot be decided on paper.").)

CP responds that Henin did not argue to the ALJ that he did not have sufficient time to conduct discovery, and in fact told the ALJ that discovery was complete. And as discussed above, despite being allowed four months to complete discovery, Henin did not engage in any discovery whatsoever. CP also notes that at least one of the purportedly late-disclosed witnesses was disclosed during the investigation of the OSHA complaint, nearly two years before the ALJ proceeding, and that Henin's dismissal letters were signed by the other purportedly late-disclosed witness. Thus, Henin knew of these individuals and could have deposed them or sought discovery from them if he wished. Moreover, Henin did not assert before the ALJ that he was prejudiced by the alleged late disclosure of these witnesses.

Henin's contentions regarding witness credibility are not well taken. He could have deposed Mr. Jarad during the ALJ's discovery period and chose not to do so. A deposition would have provided more opportunity for the ALJ to judge Mr. Jarad's testimony. And Henin's argument regarding the other witnesses likewise fails. It was his choice not to engage in any discovery before the ALJ. He cannot now complain that the discovery period was insufficient. The Rule 56(d) affidavit provides no basis for delaying consideration of CP's Motion.

**2.     Merits**

As previously noted, FRSA prohibits a railroad from retaliating against an employee for either reporting a hazardous safety condition or for reporting an on-the-job injury.

> To prevail [on a FRSA retaliation claim, the employee] must establish a prima facie case by showing (i) he engaged in a protected activity; (ii) [the railroad] knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action.

Kuduk v. BNSF Ry. Co., 768 F.3d 786, 789 (8th Cir. 2014) (citing 49 U.S.C. § 42121(b)(2)(B)(i); 29 C.F.R. § 1982.104(e)(2)).

Assuming for purposes of this Motion that Henin has established the required protected activity, the only dispute is whether Henin has raised a genuine question of fact as to whether that activity "was a contributing factor" in his termination. Id. "[T]he contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." Id. at 791. In making this showing, the employee may not rely solely on temporal proximity. See id. at 792 ("[W]e have consistently held that more than a temporal connection . . . is required to present a genuine factual issue . . . .") (quotation omitted).

Here, as in Kuduk, although Henin's May 10 injury report is close in time to the May 18 incident, the two are "completely unrelated." Id. Moreover, as to the discipline imposed for the May 10 failure to carry a lantern, "no sinister inference may be drawn" from the fact that CP learned of the rule violation because Henin was injured. Dakota, Minn. & E. R.R. Corp. v. U.S. Dep't of Labor Admin. Review Bd., 948 F.3d 940, 946 (8th

Cir. 2020). Henin has no evidence of CP's "discriminatory animus," Kuduk, 768 F.3d at 791, aside from temporal proximity, and that proximity is simply insufficient for him to meet his burden in this regard. The administrative record conclusively establishes that CP is entitled to summary judgment on Henin's FRSA claim.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss and/or for Summary Judgment (Docket No. 7) is **GRANTED** and the Complaint (Docket No. 1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:   June 11, 2021                         *s/Paul A. Magnuson*
                                               Paul A. Magnuson
                                               United States District Court Judge